## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

_____

In Re:

Jodie A Thiel,

              Debtor.

Bankruptcy Case
No. 11-02703-JDP

_____

Kathleen A. McCallister,
Chapter 13 Trustee,

              Plaintiff,
vs.

Treg A. Bernt,

              Defendant.

Adv. Proceeding
No. 14-6028-JDP

_____

### MEMORANDUM OF DECISION
_____

**Appearances:**

    Holly Roark, Boise, Idaho, Attorney for Plaintiff Kathleen
McCallister, Chapter 13 Trustee.

MEMORANDUM OF DECISION – 1

Jeffrey P. Kaufman, Law Office of D. Blair Clark, PLLC, Boise, Idaho,
Attorney for Defendant Treg A. Bernt.

## *Introduction*

Chapter 13[1] trustee Kathleen McCallister ("Plaintiff") commenced

this adversary proceeding against Treg Bernt ("Defendant").  The

complaint asserts two claims for relief.  First, it seeks an order, pursuant to

§ 363(h), authorizing Plaintiff to sell a house co-owned by Defendant along

with his former spouse, the debtor, Jodie A. Thiel ("Debtor"), free and clear

of Defendant's interest.  In the second claim, Plaintiff seeks a money

judgment against Defendant for amounts she contends he owes Debtor

under their divorce decree.

On February 20, 2015, Defendant filed a motion to dismiss both

claims in the complaint pursuant to Civil Rule 12(b)(6).  Adv. Dkt. No. 10.[2]

---

[1]  Unless otherwise indicated, all chapter and section references are to the
Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, and all Rule references are to the
Federal Rules of Bankruptcy Procedure, Rules 1001 – 9037.  All Civil Rule
references are to the Federal Rules of Civil Procedure 1 – 86.

[2]  Citations to the adversary proceeding docket are to "Adv. Dkt. No. __";
citations to the docket in Debtor's 13 bankruptcy case are to "Bankr. Dkt. No. __".

MEMORANDUM OF DECISION – 2

The Court conducted a hearing on Defendant's motion on March 31, 2015, at which the parties appeared presented arguments. The Court took the issues presented by Defendant's motion under advisement. This decision disposes of the motion.

### *Facts*[3]

Defendant and Debtor were married on March 13, 1999. Adv. Dkt. No. 1, ¶ 10. On December 5, 2005, Defendant and Debtor purchased a house located in Meridian, Idaho (the "Property"). *Id.* at ¶ 11. Defendant and Debtor divorced on August 7, 2007. *Id.* at ¶ 12.

The parties agreed to the terms of their divorce via a Custody and Property Settlement Agreement, which was incorporated as part of the state court's Judgment and Decree of Divorce (the "Divorce Decree"). *Id.*[4] The Divorce Decree ordered that the Property be sold "as soon as reasonably possible" and that the parties would "equally divide the

---

[3] As required by the rules, this recitation of the facts is based upon the allegations of Plaintiff's complaint.

[4] The Divorce Decree is attached to the adversary complaint and is incorporated by reference in the complaint. *See* Adv. Dkt. No. 1, Exh. A.

MEMORANDUM OF DECISION – 3

amount [of the sale proceeds] remaining, after the realtor and other fees

have been paid and the items provided for below[.]" Adv. Dkt. No. 1, Exh.

A at 7.  In one of the "items provided for below," the Divorce Decree

provided that Debtor "shall receive $8,100 as her sole and separate

property from the proceeds of the sale of [the Property]." *Id.*

Importantly, the Divorce Decree also explained how the mortgage

payments would be made while the parties attempted to sell the Property:

> [t]he monthly mortgage is $1,110.  [Debtor] shall
> be responsible for $925 of the mortgage and the
> parties shall divide the remaining amount of
> $185.  Therefore, [Debtor] is responsible for a total
> of $1,017.50 and [Defendant] is responsible for
> $92.50.  However, [Debtor] is unable to pay more
> than $500 per month until the home is sold,
> therefore, [Defendant] shall pay $610 towards the
> monthly mortgage, but will be reimbursed based
> upon the formula set forth above.  For example, if
> the [Property] takes three months to sell,
> [Defendant] shall pay to [Debtor] the sum of $610
> per month . . . for a total of $1830.  From the sale
> proceeds, [Defendant] is entitled to
> reimbursement of $1,552.50 ($610 x 3 = 1830 -
> ($92.50 x 3) = $1,552.50).

*Id.*

MEMORANDUM OF DECISION – 4

On September 9, 2011, Debtor filed a chapter 13 petition.  Bankr.

Dkt. No. 1.  Debtor's chapter 13 plan was confirmed on November 9, 2011.

Bankr. Dkt. No. 30.  As relevant here, Debtor's plan provides:

> **POST-CONFIRMATION RECOVERY OF
> PROPERTY.**  Debtor elects [that] the [chapter 13]
> trustee shall retain the right, post confirmation to
> recover moneys, to recover property and to avoid
> liens pursuant to 11 U.S.C. § 541 et seq.  Any such
> recovery or avoidance shall, when liquidated, be
> disbursed to creditors as additional or disposable
> income, in accordance with 11 U.S.C. § 1325(b)    .
> . . .

Bankr. Dkt. No. 3 at 2-3 (emphasis in original).  The confirmation order

modified the plan as follows: "[i]n addition to the plan payments [] Debtor

shall turn[]over the sum of $8100[,] which is her sole and separate property

awarded to her in her divorce upon the sale of the [Property]."  Bankr.

Dkt. No. 30 at 2.  Despite the provisions in the Divorce Decree, the

Property was never sold.  Adv. Dkt. No. 1, ¶ 14.

Plaintiff commenced this adversary proceeding on October 28, 2014.

In the first claim for relief, Plaintiff asks for a judgment, pursuant to

§ 363(h), allowing her

MEMORANDUM OF DECISION – 5

> to take possession of the [Property] . . .; sell the
> Property through a real estate agent free of the
> interest of the co-owners ([]Debtor and
> Defendant) and after distributing the sum of
> $8100 to []Plaintiff, order the sales [sic] proceeds,
> less the costs incurred in selling the [Property], be
> held by [] Plaintiff until further Order of this
> Court.

Adv. Dkt. No. 1 at 6, ¶ 1.  In the second claim for relief, Plaintiff prays for a

money judgment against Defendant for the $8,100 referenced in the

Divorce Decree.  Adv. Dkt. No. 1 at 6, ¶ 3.

Defendant's motion to dismiss argues that there is no legal basis for

Plaintiff's claims for relief.  The Court agrees with Defendant.

### *Analysis and Disposition*

Defendant's motion to dismiss Plaintiff's complaint is founded upon

Civil Rule 12(b)(6).  Adv. Dkt. No. 10.  Because the Property revested in

Debtor upon plan confirmation, Defendant argues the Property is not

property of the bankruptcy estate, and therefore, Plaintiff has no authority

to sell it under § 363(h).  Adv. Dkt. No. 11 at 6-7.  Addressing Plaintiff's

second claim, Defendant argues the Divorce Decree does not grant Debtor,

MEMORANDUM OF DECISION – 6

or the bankruptcy estate, any right of action to recover a money judgment

against Defendant, but rather, "[a]t most, it only gives [Debtor] an *in rem*

claim" to a portion of the proceeds when the Property is sold. *Id.* at 7.

In response, Plaintiff argues the Property did not vest in Debtor

upon confirmation of the plan because the money from the sale of the

Property was committed to fulfillment of the plan, relying upon the Ninth

Circuit's decision in *Cal. Franchise Tax Bd. v. Kendall (In re Jones)*, 657 F.3d

921 (9th Cir. 2011). Plaintiff contends the Divorce Decree creates a right in

favor of Debtor to recover the $8,100 from Defendant in addition to the

provisions that provide Debtor should receive one-half the net proceeds of

the sale of the Property.

## I.    Civil Rule 12(b)(6) Standard

Under Civil Rule 12(b)(6), applicable in adversary proceedings

pursuant to Rule 7012, a complaint, or any of its claims, may be dismissed

if it fails to state a claim upon which relief can be granted. "Courts may

dismiss claims under [Civil] Rule 12(b)(6) 'for (1) lack of a cognizable legal

MEMORANDUM OF DECISION – 7

theory or (2) insufficient facts under a cognizable legal claim.'" *Gugino v. Wells Fargo Bank N.W., N.A. (In re Lifestyle Home Furnishings, LLC)* 09.2 IBCR 41, 42 (Bankr. D. Idaho 2009) (quoting *SmileCare Dental Group v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 783 (9th Cir. 1996)).

To survive a Civil Rule 12(b)(6) motion, a complaint must allege sufficient facts, accepted as true for purposes of the motion, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)); *Taylor v. Yee*, 780 F.3d 928, 935 (9th Cir. 2015). In ruling upon a motion to dismiss, the court must construe the pleadings in a light most favorable to the nonmoving party. *Taylor*, 780 F.3d at 935 (citing *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029-30 (9th Cir. 2009)). In addition to those facts alleged in the complaint, a court may consider documents attached or incorporated by reference to the complaint without converting the motion to one for summary judgment under Civil Rule 56. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

MEMORANDUM OF DECISION – 8

If a court determines a complaint, or a claim for relief within the complaint, should be dismissed under Civil Rule 12(b)(6), it should freely grant the plaintiff the opportunity to amend the complaint so long as the amendment would not be futile. *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1039 (9th Cir. 2002).

## II.    Plaintiff's First Claim: Post-Confirmation § 363(h) Sale

Section 1327(a) provides that "[t]he provisions of a confirmed [chapter 13] plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." Moreover, although not expressly mentioned in the statute, § 1327(a) has been held to bind the chapter 13 trustee to the provisions of a confirmed plan. *See Hope v. Acorn Fin., Inc.*, 731 F.3d 1189, 1193 (11th Cir. 2013); *see also* 8 COLLIER ON BANKRUPTCY ¶ 1327.02[1] (Alan N. Resnick & Henry J. Sommer eds. 16th ed.) ("Although not specifically mentioned, the trustee is also bound by the plan because the trustee normally acts on behalf of creditors or,

MEMORANDUM OF DECISION – 9

occasionally, the debtor.").

In addition, "[i]t is well established that principles of res judicata and finality, as partly codified in [§] 1327, can make even illegal provisions of a Chapter 13 plan binding." *Cnty. of Ventura Tax Collector v. Brawders (In re Brawders)*, 325 B.R. 405, 410 (9th Cir. BAP 2005), *aff'd*, 503 F.3d 856 (9th Cir. 2007) (adopting the BAP's opinion as its own) (internal quotation marks and citations omitted); *see also Great Lakes Higher Educ. Corp. v. Pardee (In re Pardee)*, 218 B.R. 916, 923 (9th Cir. BAP 1998). A confirmed chapter 13 plan has a res judicata effect that is "'not limited to those issues actually known to creditors prior to the confirmation hearing . . . [but] is res judicata to all issues that *could have or should have been litigated* at the confirmation hearing.'" *Scott v. Countrywide Home Loans, Inc. (In re Scott)*, 376 B.R. 285, 294 (Bankr. D. Idaho 2007) (quoting *Duplessis v. Valenti (In re Valenti)*, 310 B.R. 138, 150 (9th Cir. BAP 2004) (emphasis in original)); *see also Ford Motor Credit Co. v. Lewis (In re Lewis)*, 8 B.R. 132, 137 (Bankr. D. Idaho 1981). The provisions of a chapter 13 plan "should state its intended

MEMORANDUM OF DECISION – 10

effect on a given issue." *In re Brawders*, 325 B.R. at 411.  If "it fails to do so

it may have no res judicata effect for a variety of reasons: any ambiguity is

interpreted against the debtor, any ambiguity may also reflect that the

court . . . did not make any final determination on the matter at issue . . . ."

*Id.*

      In this case, the Court concludes that the provisions of the plan, as

modified by the confirmation order, do not entitle Plaintiff to pursue a

§ 363(h)[5] sale.  To support her position that she is empowered by the plan

---

[5] Section 363(h) provides:

> Notwithstanding subsection (f) of this section, the
> trustee may sell both the estate's interest, under
> subsection (b) or (c) of this section, and the interest of
> any co-owner in property in which the debtor had, at
> the time of the commencement of the case, an
> undivided interest as a tenant in common, joint
> tenant, or tenant by the entirety, only if—
>
> (1) partition in kind of such property among the estate
> and such co-owners is impracticable;
> (2) sale of the estate's undivided interest in such

MEMORANDUM OF DECISION – 11

to sell the Property, Plaintiff first points to the "Post-Confirmation

Recovery of Property" section of the plan.  However, that section does not

mention § 363(h), nor indeed any type of post-confirmation sale.  Instead,

the plan provides "trustee shall retain the right, post confirmation to

recover moneys, to recover property and to avoid liens pursuant to 11

U.S.C. § 541 et seq."  By embarking upon a § 363(h) action to sell the

Property, co-owned by Defendant and Debtor, Plaintiff is not attempting

to "recover moneys, to recover property" or "to avoid liens" under any of

a trustee's transfer avoidance powers in Part 5 of the Code.  In other

---

property would realize significantly less for the estate
than sale of such property free of the interests of such
co-owners;
(3) the benefit to the estate of a sale of such property
free of the interests of co-owners outweighs the
detriment, if any, to such co-owners; and
(4) such property is not used in the production,
transmission, or distribution, for sale, of electric
energy or of natural or synthetic gas for heat, light, or
power.

MEMORANDUM OF DECISION – 12

words, the language of the plan, when plainly read, does not state as its

"intended effect" that Trustee will have the power to sell the Property

post-confirmation.  Instead, under this provision, Trustee is merely

empowered to exercise any rights Debtor may have with respect to the

Property.

Plaintiff next rests her position on the terms of the confirmation

order, which modified the plan.  That order references the Property and

directs that Debtor provide Plaintiff $8,100 "*upon the sale* of the [Property]."

In doing so, the order contemplates that a sale of the Property will occur at

some point, and when it does, it obligates Debtor to provide $8,100 to

Plaintiff.  But what the confirmation order does not do is authorize

Plaintiff to invoke § 363(h).  While the confirmation order demonstrates

that Debtor and Plaintiff obviously had the Property in mind at the time

the plan was confirmed, it does not take the extra step of authorizing a §

MEMORANDUM OF DECISION – 13

363(h) sale.  Assuming without deciding that such a provision would have
been appropriate, Debtor and Trustee surely could have made that more
clear in either the plan or confirmation order.

Moreover, even if the plan or confirmation order were construed to
allow for a § 363(h) sale post-confirmation sale, the Court concludes the
Property lost its status as property of the estate upon confirmation
pursuant to § 1327(b), which provides: "[e]xcept as otherwise provided in
the plan or the order confirming the plan, the confirmation of a plan vests
all of the property of the estate in the debtor."

Plaintiff offers *Cal. Franchise Tax Bd. v. Kendall (In re Jones)*, 657 F.3d
921 (9th Cir. 2011) for authority that the Property remained property of the
estate notwithstanding confirmation of the plan.  Plaintiff points to the
statement in *In re Jones* that "sums specifically dedicated to the fulfillment
of the plan" do not vest in the debtor upon confirmation of a plan.  *Id.* at

MEMORANDUM OF DECISION – 14

928.  Then, applying *In re Jones* to this case, Plaintiff argues that because

the confirmation order dedicated $8,100 to Debtor's plan from the sale of

the Property, it must have been intended that the Property not vest in

Debtor upon confirmation.

The issue decided by the court in *In re Jones* was whether a taxing

authority had violated the § 362(a) automatic stay in seeking to collect

delinquent, postpetition taxes from the debtor during the pendency of the

debtor's chapter 13 plan.  The Ninth Circuit held that, under § 1327(b),

because the debtor had a confirmed chapter 13 plan that vested property

of the estate in the debtor—as opposed to the bankruptcy estate—the

taxing authority did not violate the automatic stay by attempting to collect

the taxes from the debtor.  *In re Jones*, 657 F.3d at 928-29.  In so holding, the

panel discussed the various interpretations by courts as to whether, and to

what degree, property of the estate revests in a debtor upon plan

MEMORANDUM OF DECISION – 15

confirmation under § 1327(b), but it declined to adopt a particular

approach.  *Id.* at 928.  Instead, the panel concluded that it was sufficient

under the facts of the case to "hold that under the plain language of

§ 1327(b), the property of the estate revests in the debtor upon plan

confirmation, unless the debtor elects otherwise in the plan."  *Id.*

While the Ninth Circuit did not find it necessary to endorse a

particular vesting rule under § 1327(b), the Ninth Circuit Bankruptcy

Appellate Panel (BAP) had adopted such a rule in its ruling in *In re Jones*.

After reviewing four approaches under § 1327(b), the BAP adopted the

"estate termination approach":  "Under this approach, all property of the

estate vests in the debtor at confirmation[,]" unless the plan or

confirmation order provides differently.  *In re Jones*, 420 B.R. 506, 514 (9th

Cir. BAP 2009) (citing *In re Petruccelli*, 113 B.R. 5, 15 (Bankr. S.D. Cal.

1990)).  In other words, according to the BAP, the bankruptcy estate ceases

MEMORANDUM OF DECISION – 16

to exist upon plan confirmation, except for property clearly reserved for the bankruptcy estate in the plan or order confirming the plan. *In re Jones*, 420 B.R. at 517.

In this case, it is undisputed that the plan dictated that property of the estate would vest in Debtor upon plan confirmation. As a result, the bankruptcy estate ceased to exist upon plan confirmation except for property clearly reserved for the bankruptcy estate in the plan or the order confirming the plan. Here, Plaintiff points to the order confirming the plan as reserving the Property for the bankruptcy estate. But the confirmation order does not go that far. While the confirmation order referenced the $8,100, and required Debtor to turn over that amount "upon the sale of the [Property]," this provision did not devote all of the Property to the plan so as to prevent it from "revesting" in Debtor upon confirmation under the "estate termination approach." This is so because

MEMORANDUM OF DECISION – 17

the confirmation order did not clearly provide that the Property would

remain property of the estate, but rather, only that "upon the sale of the

Property" Debtor will turn over the $8,100 referenced in the Divorce

Decree.  This language is insufficient to utilize the "except as otherwise

provided" provision of § 1327(b).  *See In re Jones,* 420 B.R. at 516-17 ("If a

debtor seeks to postpone revesting of all or some of the property of the

estate, the plan or order of confirmation should clearly say so.  Saying so is

easy to do.") (quoting *In re Petruccelli*, 113 B.R. at 17).

Defendant's motion to dismiss Plaintiff's first claim in the complaint

will be granted because Plaintiff has stated no cognizable legal theory

upon which she could prevail.  The Court also concludes, based on the

above analysis, that allowing Plaintiff to amend this count of the complaint

would be futile.

### III.   Plaintiff's Second Claim: Money Judgment

Plaintiff's complaint also seeks a money judgment against

Defendant for the $8,100 referred to in the Divorce Decree.  Plaintiff offers

MEMORANDUM OF DECISION – 18

the Court no legal authority to support this request other than to state that

she is entitled to recover it because the plan authorizes her to receive the

funds, and the Divorce Decree requires Defendant to pay the amount to

Debtor.

Parsing the language in the Divorce Decree more precisely,

Defendant counters that the Divorce Decree merely sets forth a method to

divide the sale proceeds upon the sale of the Property: that Debtor receive

the first $8,100 from the net proceeds, with the balance (if any) to be

equally divided between Debtor and Defendant.

In Idaho, "[t]he interpretation of decrees or judgments is generally

subject to the same rules applicable to construction of contracts." *McKoon*

*v. Hathaway*, 190 P.3d 925, 928 (Idaho Ct. App. 2008) (citing *Toyama v.*

*Toyama*, 922 P.2d 1068, 1070 (Idaho 1996); *DeLancey v. DeLancey*, 714 P.2d

32, 34 (Idaho 1986)). If the language used is unambiguous the contract

should be enforced according to its terms. *Steel Farms, Inc. v. Croft & Reed,*

*Inc.*, 297 P.3d 222, 229 (Idaho 2012).

MEMORANDUM OF DECISION – 19

Applying these principles, Defendant's position is, again, the sound one. The Divorce Decree provided that the Property should be sold "as soon as possible". Although a sale is yet to occur nearly eight years later, the Divorce Decree provided no mechanisms to force a sale of the Property, nor did it specify what would happen absent a prompt sale.[6] Upon the sale of the Property, the Divorce Decree described how the sale proceeds were to be allocated: "[t]he parties shall then equally divide, after the realtor and other fees have been paid and the items provided for below[.]" Immediately below this provision, the Divorce Decree states that Debtor was to receive $8,100 as "her sole and separate property *from the proceeds of the sale of this home*." (Emphasis added). The Divorce Decree next provides that Debtor would be responsible for $925 of the $1,110 mortgage payment while the Property was for sale, but acknowledged that

---

[6] The Divorce Decree also did not contemplate the possibility that the Property would not sell for enough money to cover the costs incurred in the sale or the amount of the secured claims against the Property. Obviously, the parties' approach to monetizing their interests in the Property in the Divorce Decree was less than comprehensive.

MEMORANDUM OF DECISION – 20

Debtor could not afford to pay that entire amount. As a result, the Divorce

Decree instructed that Defendant would pay $610 of the mortgage

payment, with Debtor paying $500 of the mortgage amount, and that

Defendant would be "reimbursed based upon the formula set forth above .

. . from the sale proceeds."

The Court's interpretation of the Divorce Decree is that it provided a

means to calculate the amount owed between the former spouses upon the

sale of the Property and realization of cash sale proceeds. If the Property

were sold immediately, without a the need for Defendant to, in effect,

subsidize Debtor's obligation to share in the mortgage payments, Debtor

would receive $8,100 from those proceeds, with the remainder of those

funds, if any, to be split equally between the parties. However, if the

Property was not quickly sold, the economic realities, as implemented

through the parties' agreement in the Divorce Decree, required Defendant

to pay Debtor's disproportionate share of the monthly mortgage

MEMORANDUM OF DECISION – 21

installments, with Defendant to be reimbursed for these extra amounts

when sale proceeds became available.  Of course, doing so would reduce

the amount Debtor would be entitled to receive from the sale proceeds.

The parties seem to acknowledge that, in negotiating the terms of

the Divorce Decree, they did not anticipate that the Property would not be

sold in the short term, nor that Defendant would have to contribute

significantly more to paying the mortgage that he originally intended.

However, to the extent that Plaintiff seeks to modify the approach taken

by the parties and state court in the Divorce Decree, this Court lacks the

authority or inclination to do so.  *See Thompson v. Thompson*, 798 F.2d 1547,

1558 (9th Cir. 1986) ("Even when a federal question is presented, federal

courts decline to hear disputes which would deeply involve them in

adjudicating domestic matters."); *Donald v. Donald (In re Donald)*, 755 F.2d

715, 717 (9th Cir. 1985) ("It is appropriate for bankruptcy courts to avoid

incursions into family law matters out of consideration of court economy,

MEMORANDUM OF DECISION – 22

judicial restraint, and deference to our state court brethren and their

established expertise in such matters.") (internal quotation marks and

citations omitted).    If, based on circumstances occurring after entry of the

Divorce Decree, Debtor and Plaintiff believe they have grounds to do so,

they are invited to direct their arguments for relief to the state court that

entered the Divorce Decree.

The Court concludes the Divorce Decree does not support a claim in

favor of Debtor against Defendant which Plaintiff can enforce.  Therefore,

Defendant's motion to dismiss shall be granted.  However, in responding

to Defendant's motion to dismiss, Plaintiff alleges additional facts not

contained in the complaint that, perhaps, could support her claim against

Defendant.  Because of this, Plaintiff will be granted leave to promptly

amend this claim in the complaint if she so desires.

### Conclusion

In a separate order, the Court will: (1) grant Defendant's motion to

MEMORANDUM OF DECISION – 23

dismiss Plaintiff's first claim for relief in complaint seeking authority to sell

the Property under § 363(h) with prejudice; and (2) grant Defendant's

motion to dismiss Plaintiff's second claim for relief in the complaint

seeking a money judgment, but Plaintiff will be granted leave to promptly

file an amended complaint.

Dated:  May 18, 2015

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION – 24